# UNITED STATES of America, Plaintiff–Appellee,

v.

# Eduardo IGNANCIO MUNIO, Defendant–Appellant.

No. 89–5453.

United States Court of Appeals, Eleventh Circuit.

Aug. 15, 1990.

Russell Rosenthal, Anthony Musto, Coral Gables, Fla., for defendant-appellant.

William F. Jung and Sonia O'Donnell, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before CLARK, Circuit Judge and MORGAN and RONEY *, Senior Circuit Judges.

PER CURIAM:

This sentencing guidelines case involves first, whether a district court may rely on offense conduct not charged in an indictment to enhance a defendant's sentence under the relevant conduct provision, U.S. S.G. § 1B1.3, and second, whether it is

* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

appropriate for a district court to apply the preponderance of the evidence standard to offense conduct used to enhance defendant's sentence. Because we agree with the district court's disposition of this case, we affirm.

## FACTS

In mid November, 1988, appellant gave an informant employed by the Secret Service four counterfeit "sample" notes. On November 19, 1988, appellant transferred to the informant $10,840 in counterfeit federal reserve notes and received in exchange $500 in genuine currency. Appellant was arrested on December 5, 1988 and subsequently indicted on three counts. Count I charged a conspiracy to possess counterfeit currency in violation of 18 U.S.C. § 371. Count II charged possession in violation of 18 U.S.C. § 472. Count III charged delivery or transfer of counterfeit notes in violation of 18 U.S.C. § 473. Each count of the indictment specifically referred to the $10,840 in counterfeit currency appellant delivered to the informant.

A total of six persons were arrested in connection with this counterfeiting scheme. The Secret Service seized approximately $1.1 million in counterfeit notes at a co-defendant's house. At the sentencing hearing, the government offered three bases for connecting appellant to the $1.1 million. First, three of the co-defendants made confessions implicating appellant as the mastermind behind the whole scheme. Second, the agents also seized some blank 24 lb. Crane stock (paper) from appellant's home. The evidence failed to show conclusively that the paper from appellant's home was used in making the $1.1 million in counterfeit notes. Apparently, however, this paper is a very high quality typing paper which is often used to make counterfeit notes. Appellant did not own a typewriter and the district court found appellant's proffered explanation of why he had the Crane paper, "simply unbelievable." Finally, secret service agents observed appellant riding in a particular vehicle with one of the co-defendants shortly before agents seized the $10,840. The co-defendant and the same car were present when secret service seized the $1.1 million approximately two weeks later.

Appellant pled guilty to Count III. The government agreed to dismiss the remaining two counts and to recommend a two-point reduction in appellant's offense level for acceptance of responsibility. That recommendation was conditioned on the defendant's cooperation with the Probation Department in their preparation of the presentencing report (PSR). The written agreement contained no prediction of sentence and made clear that the court could give any sentence, up to the statutory maximum, authorized by law. The agreement also reserved to each party their right of allocution and stated that the court was not bound by any recommendation.

In the PSR, the probation officer recommended an offense level increase based on appellant's involvement with the $1.1 million in counterfeit notes. Appellant filed a written objection to this allegation to which the probation officer responded. The objection and response were part of the record available at sentencing to the parties and the sentencing court. During the sentencing hearing, the district court heard evidence on the defendant's connection to the $1.1 million in counterfeit currency. The defendant adamantly denied any such involvement. Defendant was sentenced under U.S.S.G. §§ 2B5.1(a) and 2B5.1(b)(1), which provide a base offense level of 9 and increases in offense level if the face value of the counterfeit items exceeds $2,000. Applying this guideline, the probation officer and the court arrived at an adjusted offense level of 18 based on the dollar value of both the counterfeit currency included in the indictment and that seized at the co-defendant's house. The government refused to recommend a two-level reduction for acceptance of responsibility and instead recommended a two level increase for obstruction of justice. Defendant argued that he should receive the two-level reduction for his cooperation. The court declined both invitations and sentenced defendant using offense level 18.

## DISCUSSION

### A. Relevant Conduct.

■ Appellant contends that *United States v. Scroggins*, 880 F.2d 1204 (11th Cir.1989), stands for the proposition that only conduct charged in the indictment may be used to enhance a sentence for a conviction. Specifically, appellant asserts that since the indictment did not charge an amount of counterfeit currency greater than $10,840, the district court erred in considering the evidence of defendant's connection with the counterfeit $1.1 million. Appellant's argument evidences a misunderstanding of "relevant conduct."[1] This case is distinguishable from *Scroggins* where the conduct used to adjust the sentence was contained in the indictment and the defendant confessed to committing the acts charged in all counts of the indictment. *Scroggins* simply recognizes that it is appropriate to adjust a sentence under those circumstances; however, the case does not define the outer limits of relevant conduct. An important factor present in both this case and *Scroggins* is that the appellant had notice that the government considered certain conduct relevant to appellant's sentencing calculus. Adequate notice gives each of the parties an opportunity to file objections and to prepare opposing arguments which the court will resolve at the sentencing hearing. *United States v. Castellanos*, 882 F.2d 474, 477 (11th Cir.1989). *See generally* Fed.R.Crim.P. 32. *See also United States v. Jordan*, 890 F.2d 968, 975–76 (7th Cir.1989) (provided the defendant has "been informed of the probation officer's recommendations," and is "not unfairly surprised with new evidence or information, the court is free to announce its sentence in compliance with the Guidelines

and other applicable law"). There is no question that appellant had adequate notice of the government's intention to present evidence of his involvement with the $1.1 million in counterfeit currency.

In *Scroggins,* the court distinguished between the terms "offense conduct" and "offense of conviction."[2] The court defined "offense of conviction" as "referring only to the conduct charged in the indictment for which the defendant was convicted." Appellant contends that reading this definition into U.S.S.G. § 1B1.3 compels the conclusion that only conduct charged in the indictment may be considered as relevant conduct. Appellant misreads *Scroggins* in this regard. Offense conduct is the product of applying the relevant conduct provision to the offense of conviction. The sentencing process "yields a numeric 'total offense level' that consists of three elements." *Id.* at 1209. One of these elements concerns specific offense characteristics "which increase or decrease the base offense level in light of various factors considered relevant to the defendant's *offense conduct.*" *Id.* The court defined "offense conduct" as referring "to the *totality of the criminal transaction* in which the defendant participated and which gave rise to his indictment, *without regard to the particular crimes charged in the indictment.*" *Id.* at 1209 n. 12 (emphasis added). This is the step in sentencing where a court takes the general offense level determined from the offense of conviction and tailors it to the particular defendant based upon the defendant's offense conduct.

This expansive view of what conduct may be considered as relevant conduct is mirrored in the guidelines' approach to sen-

---

1. U.S.S.G. § 1B1.3(a)(1), defines relevant conduct as: "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction." The Commentary to that section describes the "otherwise accountable" clause as including "conduct that the defendant counseled, commanded, induced, procured, or willfully caused."

2. When referring to an offense, the guidelines use two similar terms: "offense conduct" and "offense of conviction." The term "offense conduct" refers to the totality of the criminal transaction in which the defendant participated and which gave rise to his indictment, without regard to the particular crimes charged in the indictment. The term "offense of conviction" is narrower in scope, referring only to the conduct charged in the indictment for which the defendant was convicted. *Scroggins,* 880 F.2d at 1209 n. 12.

tencing for the quantity of drugs involved in a drug negotiation, even though the transaction is never consummated. *See, e.g., United States v. Alston,* 895 F.2d 1362, 1369–72 (11th Cir.1990) (upholding sentence where "the district court determined the base offense level for the amount of cocaine involved in the scheme and not merely the four ounces charged in the count to which [defendant] had entered his plea"). *Alston* does not entirely refute appellant's argument as it appears that the indictments there may have included the larger amount. However, nothing in *Alston*, in the other circuit opinions cited by appellant, or in the guidelines indicates offense conduct is limited to that alleged in the indictment. In *Alston*, the court noted that *Scroggins* "implied that even if the defendant claimed he was innocent of the uncharged conduct, such evidence could have been considered in determining the base offense level for the charge of conviction *if there was sufficient evidence to support a finding that defendant did in fact commit such offenses." Alston,* 895 F.2d at 1371 n. 11 (emphasis added).[3]

In *United States v. Wilson,* 884 F.2d 1355, 1355–56 (11th Cir.1989), the defendant was convicted on both counts of the indictment which charged drug crimes involving fifty grams of crack cocaine. In establishing that Wilson's offense level should reflect his involvement with over 500 grams of cocaine base, the district court relied on testimony of Wilson's co-defendants. This court affirmed the sentence and concluded that the co-defendants' testimony was sufficiently reliable to provide a basis for increasing the offense level. Our decision today is in accord with other courts which have expressly concluded that conduct not contained in the indictment may be considered at sentencing. *United States v. Allen,* 886 F.2d 143, 145–46 (8th Cir.1989); *United States v. Sarasti,* 869 F.2d 805, 806 (5th Cir.1989) ("The guidelines make plain that the district court is

not bound by the quantity of drugs mentioned by the indictment."); *United States v. Bennett,* 716 F.Supp. 1137, 1144 (N.D. Ind.1989).

**B. Standard of Proof.**

■ In *Alston*, this court held that due process does *not* require the government to prove disputed facts at sentencing beyond a reasonable doubt. *Alston,* 895 F.2d at 1372–73. The court noted that several other circuits have adopted the preponderance of the evidence standard. The guidelines specifically address the standard of proof in U.S.S.G. § 6A1.3 which states in part: "In resolving any reasonable dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." In this circuit, preponderance of the evidence is clearly sufficient.

**C. Acceptance of Responsibility.**

■ Application Note 1 to § 3E1.1 lists several factors which a court may consider in determining whether an adjustment under this guideline is appropriate, among them is "voluntary and truthful admission to authorities of involvement in the offense and related conduct." Elsewhere, the Commission recognizes that "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility," and for that reason, "the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation." U.S.S.G. § 3E1.1, comment. (n. 5). In *United States v. Spraggins,* 868 F.2d 1541, 1543 (11th Cir.1989), the court emphasized the importance of defendant's acceptance of responsibility for "related conduct." [4]

---

**3.** That a court may consider a wide range of information at sentencing is not new; this practice was part of the pre-guidelines sentencing scheme. *Scroggins,* 880 F.2d at 1212–13.

**4.** Appellant contends that he should not have to incriminate himself to receive the benefit of the two-level reduction for acceptance of responsibility. In *United States v. Henry,* 883 F.2d 1010, 1011–12 (11th Cir.1989), this court rejected the contention that § 3E1.1 violates a defendant's

The court also noted that § 3E1.1 provides for the adjustment, "[i]f the defendant *clearly* demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." 868 F.2d at 1542 (quoting § 3E1.1(a)) (emphasis in *Spraggins* ). The trial court did not err by refusing to reduce appellant's offense for acceptance of responsibility.

### D. Breach of the Plea Agreement.

 The government conditioned its recommendation on defendant's cooperating in the preparation of the Pre-sentencing Report. Given the fact that defendant contested his connection with the "related conduct," he did not cooperate and thus did not earn the recommendation.[5]

Accordingly, the decision of the district court is AFFIRMED.

fifth amendment rights because it requires him to further incriminate himself, with information that the district court may use to increase the sentence, to qualify for the two level reduction. The case cited by appellant—*United States v. Perez–Franco*, 873 F.2d 455 (1st Cir.1989)—is not precedent for this court and is inconsistent with *Spraggins* and *Henry.*

5. This court through another panel is issuing an opinion in *United States v. Jefferies*, 908 F.2d 1520 (1990), which holds the government to its plea agreement which provided that the "quantity involved … is approximately 13 grams of cocaine." The district court considered a larger quantity of cocaine when sentencing. We reversed. The *Jefferies* case involved a Fed.R. Crim.P. 11(e)(3) agreement. *See United States v. Tobon–Hernandez*, 845 F.2d 277 (11th Cir. 1988).

In the instant case the plea agreement is controlled by Fed.R.Crim.P. 11(e)(1)(B), which covers an agreement wherein the government agrees to "make a recommendation," but such an agreement is not binding on the court. Further, in this case, the government established that the defendant failed to cooperate with the Probation Department. In any event, the district court was not bound by the agreement as was the case in *Jefferies.*