**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Thomas M. KAPPES, III,
Defendant–Appellant.**

**No. 90–6276.**

United States Court of Appeals,
Sixth Circuit.

Argued March 25, 1991.

Decided May 29, 1991.

Rehearing Denied June 25, 1991.

fraudulent statements to the U.S. Labor Department. The principal issue on appeal relates to the district court's use of the "relevant conduct" provision of the U.S. Sentencing Guidelines to increase Kappes' sentence. As we find that the district court applied the relevant conduct provision too broadly, we reverse and remand for resentencing.

I

Kappes initially injured his back in 1983. Shortly after the injury, the United States Postal Service (USPO) hired Kappes as a maintenance mechanic and required him to complete a medical history form. Kappes did not mention his back injury on the form.

On December 17, 1984, Kappes re-injured his back while working as a USPO employee. He filed an occupational injury claim in December 1984 with the U.S. Department of Labor, Office of Workers' Compensation Programs (OWCP). Following the injury Kappes worked intermittently, and was unable to work at all after August 8, 1985. Kappes then began receiving compensation payments of $1,741.00 per month from OWCP. Kappes received temporary total disability payments under the Federal Employees Compensation Act (FECA), 5 U.S.C. § 8105.

In April 1989, Kappes filled out a U.S. Labor Department form inquiring whether he had been employed or self-employed during the previous fifteen months. Kappes filled out another form in August 1989. On both forms Kappes stated that he had not been employed during the previous fifteen months.

Kappes was indicted in May 9, 1990 by a federal grand jury in the Eastern District of Kentucky. The indictment alleged two counts of making false or fraudulent statements to a United States department or agency, in violation of 18 U.S.C. § 1001.[1] Kappes' answers on the forms constituted the two counts of the indictment.

Frederick A. Stine, V, Asst. U.S. Atty. (argued), Office of U.S. Atty., Covington, Ky., for plaintiff-appellee.

Marshall C. Hunt, Jr. (argued), Cincinnati, Ohio, for defendant-appellant.

Before JONES and SUHRHEINRICH, Circuit Judges, and JOINER,* Senior District Judge.

NATHANIEL R. JONES, Circuit Judge.

Defendant Thomas M. Kappes appeals his jury conviction for making false and

* The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

1. Section 1001 provides in full:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or

A jury trial began on July 17, 1990. Testimony established that during the fifteen month period in question, Kappes had worked at a business called Computer Mania in Florence, Kentucky and received $2,487.00 in compensation. The jury found Kappes guilty on July 19, 1990. Kappes then moved for a judgment of acquittal, or, alternatively, for a new trial. The district court denied both motions on August 6, 1990.

Following the guilty verdict, a U.S. Probation Officer prepared a presentence investigation report (PSI). The PSI stated that Kappes had obtained his job with USPO under false pretenses because at the time of his hiring Kappes failed to reveal his back injury. The PSI considered this to be "relevant conduct" under section 1B1.-3(a)(2) of the Sentencing Guidelines and recommended a two-level increase in the base offense level. The PSI also recommended a two-level increase for "more than minimal planning", pursuant to section 2F1.1(b)(2)(A) of the Guidelines.

The district court conducted a sentencing hearing on September 24, 1990. At the hearing, the court found that Kappes had concealed his prior back injury in order to gain employment with the USPO. Thus, the district court found that "the offense level should include the submission of false forms" during Kappes' physical exam at the time of his hiring. *Id.* As a result, the court set the base offense level at fourteen, which gave a Guidelines range of fifteen to twenty-one months. Kappes was sentenced to twenty-one months imprisonment.

## II

■ Kappes argues that the government erred in considering his false statement on his 1983 pre-employment form as "relevant conduct." Whether an activity is considered "relevant conduct" under the Sentencing Guidelines is a question of fact which should not be disturbed unless found to be clearly erroneous. *See United States v. Miller*, 910 F.2d 1321, 1327 (6th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991).

The goal of the relevant conduct provision is to allow a court to impose sentences commensurate with the gravity of the offense. Section 1B1.3(a)(2) of the Guidelines states that the base offense level "shall be determined on the basis of ... all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." [2] The government contends that the similarity of Kappes' false statements in 1983 and 1989 reveals a pattern of criminal conduct. The government also states that if Kappes had truthfully answered the pre-employment form in 1983, he would not have been hired and therefore would not have been in a position to make false statements in 1989. (Kappes was not prosecuted for his false statement in 1983 because the statute of limitations had expired.)

■ A district court may consider conduct not charged in an indictment in determining a defendant's base offense level. *Miller*, 910 F.2d at 1327. Allowing a district court to consider conduct for which the defendant was not convicted or indicted is in accordance with pre-Guidelines practice. In order to comport with due process requirements, however, proof of the relevant conduct should be "supported by 'some minimal indicium of reliability beyond mere allegation.'" *United States v.*

fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.
18 U.S.C. § 1001 (1988).

2. Section 1B1.3(a)(2) limits the application of the relevant conduct provision "to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts." Section 3D1.2(d),

which deals with grouping of closely-related counts, requires grouping of counts "[w]hen the offense level is determined largely on the basis of the total amount of harm or loss[.]" The district court determined the total loss in this case to be $121,240.63, the total amount of disability payments paid to Kappes. Because the offense involved fraud or deceit, section 2F1.1 requires that the base offense level be increased six levels.

*Smith,* 887 F.2d 104, 109 (6th Cir.1989) (citation omitted). In this case, the fact that Kappes concealed information in violation of federal law in 1983 is not in dispute. Instead, the issue is whether the 1983 offense was "part of the same course of conduct or common scheme or plan as the offense of conviction[.]" United States Sentencing Commission, *Guidelines Manual* § 1B1.3(a)(2) (Nov.1990).

■ The relevant conduct issue presented in this case is somewhat unique. In the typical case, the relevant conduct provision permits an increase in base offense level based on a quantity of drugs not part of the count of conviction yet part of the same overall scheme. *See, e.g., United States v. Robison,* 904 F.2d 365, 371 (6th Cir.) (reversing district court's increase of offense level because higher quantity of drugs not supported by preponderance of the evidence), *cert. denied sub nom. Smoot v. United States,* — U.S. ——, 111 S.Ct. 360, 112 L.Ed.2d 323 (1990). Quantities of drugs not specifically included in an indictment nevertheless may be used to increase a defendant's base offense level. Similarly, in fraud, property, and tax cases, the determination of which conduct is relevant under the Guidelines is simplified because the base offense level turns on quantity. *Id.*

As the Guidelines commentary states, drug cases are especially well suited to relevant conduct considerations because the sentence, to a large extent, hinges on the quantity involved. U.S.S.G. § 1B1.3, comment. (backg'd). The Guidelines' commentary further implies that assault, robbery, and burglary offenses are not conducive to relevant conduct considerations because the offense level in these offenses does not depend on a quantity. U.S.S.G. § 1B1.3, comment. (backg'd.) ("Section (a)(2) provides for consideration of a broader range of conduct with respect to one class of offenses, primarily certain ... drug offenses for which the guidelines depend substantially on quantity, than with respect to other offenses such as assault, robbery and burglary."). The logic of sentence enhancement for relevant conduct in drug cases is apparent: a single defendant may possess little or no drugs at the time of arrest but still be involved in an ongoing course of conduct involving large amounts of drugs.

Both the district court and the government cite primarily to cases where the relevant conduct concerns a related amount of drugs or drug sales. *See United States v. Santiago,* 906 F.2d 867, 873 (2d Cir.1990) (prior drug sales considered relevant conduct); *Miller,* 910 F.2d at 1327 (quantity of cocaine sold over twenty-month period was relevant conduct). The only non-drug case cited by either the government or the district court, *United States v. Munio,* 909 F.2d 436, 439 (11th Cir.1990), merely stands for the proposition that conduct not mentioned in an indictment may be considered at sentencing. Moreover, the Eleventh Circuit's application of the relevant conduct provision in *Munio* closely mirrors drug cases. The defendant was caught with $10,840 in counterfeit bills, and a co-defendant was caught with $1.1 million in counterfeit notes. *Id.* at 437. The district court considered the $1.1 million as relevant conduct when sentencing the defendant. *Id.* at 439.

The instant case presents a far different scenario from that in *Munio, Miller,* or *Santiago.* Kappes committed two similar offenses six years apart. The fact that Kappes may not have been in a position to commit the second offense if he had not committed the first offense does not, by itself, make the second offense "part of the same course of conduct or common scheme or plan" as the first offense. If this type of "but for" reasoning were to gain acceptance, the relevant conduct provision would assume increasingly broad proportions. Under this logic, any employment-related offense committed by Kappes after 1983 would be relevant conduct. The two actions, we conclude, were not "part of the same course of conduct or common scheme or plan." U.S.S.G. § 1B1.3(a)(2). *See also United States v. Wood,* 924 F.2d 399, 404–05 (1st Cir.1991) (distinguishing between "related" and "unrelated" in determining relevant conduct). Although similar, the two offenses were unrelated acts separated

by the passage of six years. U.S.S.G. § 1B1.3, comment. (backg'd.) ("[O]ffenses of the character dealt with in subsection (a)(2) ... often involve a pattern of misconduct that cannot readily be broken into discrete, identifiable units that are meaningful for purposes of sentencing.").

The government asserts that because both offenses related to Kappes' status with the Postal Service, the 1983 offense is relevant conduct. Finding the 1983 offense to be relevant conduct ascribes to Kappes a considerable degree of foresight. This would require us to conclude that at the time of his hiring in 1983, Kappes thought that his back would give out again and that he would subsequently face an unreported income dilemma. We find this scenario implausible and decline to interpret the relevant conduct provision so broadly as to incorporate such an improbable situation. *See Wood*, 924 F.2d at 403–04 ("[Section] 1B1.3(a)(2) is not open-ended in allowing a sentencing court to take into account criminal activity other than the charged offense.... The goal of the provision, we think, is ... not to impose a penalty for the charged crime based on unrelated criminal activity.")

The government, no doubt, was perturbed at not being able to prosecute Kappes for the 1983 offense due to the expiration of the statute of limitations. Characterizing the earlier offense as relevant conduct, however, was not the way to make up for lost opportunities. Nevertheless, the 1983 offense may still be considered in determining a specific sentence with the Guidelines range when the district court resentences on remand. Section 1B1.4 states that when determining a sentence within a particular Guidelines range, "the court may consider, without limitation, any information concerning the background, character and conduct of the defendant[.]"

We find that the district court was clearly erroneous in finding that the 1983 offense was relevant conduct in sentencing Kappes for the 1989 offense. Although the two offenses involved violations of the same statute, it would take an impermissible stretch of the imagination to conclude that the 1983 offense was part of the same "course of conduct" as the 1989 offense.

### III

■ Kappes received temporary total disability payments under 5 U.S.C. § 8105(a). Section 8105 makes no mention of a reporting requirement.[3] Thus, Kappes argues that the Labor Department had no statutory authority to request income information from him. Kappes was indicted, however, under 18 U.S.C. § 1001. Section 1001 broadly applies to "[w]hoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully ... makes any false, fictitious or fraudulent statements or representations[.]" 18 U.S.C. § 1001 (1988). We find that section 1001 provided clear statutory authority to justify holding Kappes to the reporting requirement. Support for this position is found in *United States v. Olson*, 751 F.2d 1126 (9th Cir. 1985):

Section 1001 is a "catch-all, reaching those false representations that might 'substantially impair the basic functions entrusted by law to [the particular] agency', but which are not prohibited by other statutes." It is "intended to serve the vital public purpose of protecting governmental functions from frustration and distortion through deceptive practices," and to reach "those false statements that might support fraudulent claims against the Government, or that might pervert or corrupt the authorized functions of those agencies to whom the statements were made." In accord with the philosophy expressed in these cases, we hold that

**3.** Section 8105 states in full:
(a) If the disability is total, the United States shall pay the employee during the disability monthly monetary compensation equal to 66⅔ percent of his monthly pay, which is known as his basic compensation for total disability.

(b) The loss of use of both hands, both arms, both feet, or both legs, or the loss of sight of both eyes, is prima facie permanent total disability.
5 U.S.C. § 8105 (1988).

§ 1001, by itself, required Olson to disclose the information he has been accused of withholding.

*Olson*, 751 F.2d at 1128–29 (citations omitted).

## IV

 The district court also increased the base offense level because it found that the offense involved more than minimal planning. Section 2F1.1(b)(2) of the Guidelines permits a two level increase in a base offense level if an offense involved "more than minimal planning." The Guidelines state that "more than minimal planning" is present if the defendant took "significant affirmative steps to conceal the offense." U.S.S.G. § 1B1.1, comment. (n. 1(f)). We note that Kappes' period of unreported employment spanned several years. During this time, he failed to report his employment activities to his attending physician during 1987 and 1988, or to his employment vocational specialist. Kappes also failed to report the outside income on his tax forms during the years in question. These facts indicate to us that Kappes took extensive measures to conceal the offense. The district court was not clearly erroneous in concluding that the offense involved more than minimal planning.

## V

The conviction is AFFIRMED, but the sentence is VACATED and the case REMANDED for resentencing consistent with the principles expressed in this opinion.