53 F.3d 332
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Melissa K. SIZEMORE, Defendant-Appellant.
 No. 94-5868.
 United States Court of Appeals, Sixth Circuit.
 April 24, 1995.
 
 Before: JONES, CONTIE and MILBURN, Circuit Court Judges.
 PER CURIAM.
 
 
 1
 Defendant-Appellant Melissa K. Sizemore appeals her sentence entered on a plea of guilty of conspiracy to fraudulent use of unauthorized credit card numbers. For the following reasons, we vacate Sizemore's sentence and remand the case for further proceedings.
 
 I.
 
 2
 On November 4, 1993, a Federal Grand Jury in London, Kentucky returned a two count indictment naming six defendants[1] with one count of conspiracy to commit credit card fraud in violation of 18 U.S.C. Sec. 1029(b)(2) (1988) and one count of aiding and abetting fraud in connection with access devices in violation of 18 U.S.C. Sec. 1029(a)(2) and 18 U.S.C. Sec. 2.[2]
 
 
 3
 On February 18, 1994, Defendant-Appellant Melissa K. Sizemore plead guilty to one count of conspiring to fraudulently use credit cards. Pursuant to her plea agreement, the government agreed to drop Count Two in return for Sizemore's testimony against co-defendant Mickie White in White's trial.
 
 
 4
 Sizemore's presentence report ("PSR") recommended that she be held accountable for the entire amount of the fraud and recommended a three level enhancement, pursuant to U.S.S.G. Sec. 2F1.1(b)(1)(D).[3] Following a sentencing hearing, the lower court adopted the recommendation in the PSR, held Sizemore accountable for the full amount of the fraud and enhanced her sentence by three levels. Accordingly, Sizemore was sentenced to nine months imprisonment.
 
 
 5
 On appeal, Sizemore argues (1) that the trial court committed clear error by interpreting the content of her plea agreement to permit the consideration of "relevant conduct" for sentencing purposes, and (2) the lower court improperly applied the relevant conduct provision of the sentencing guidelines and erroneously found her responsible for the entire $19,299.35 worth of fraud. Sizemore argues that she should have been held responsible for only $8,707.77 worth of fraud, thus reducing her enhancement to two-levels pursuant to U.S.S.G. Sec. 2F1.1(b)(1)(C). With the three-level enhancement, Sizemore's criminal history category of 1 meant that her sentencing range was 4-10 months. A two-level enhancement, however, would have made her immediately probation eligible because her sentencing range would have been 0-6 months.
 
 II.
 
 6
 Sizemore claims that her plea agreement precluded consideration of transactions other than those which she was "present and personally involved in." Sizemore Br. at 21. Sizemore also claims that, although not stated in her plea agreement, the Government assured her (1) that during Mickie White's trial, no testimony would be offered concerning her (Sizemore's) participation in any particular fraudulent transaction, and (2) that the Government would not oppose her "duress" defense during the sentencing hearing.
 
 
 7
 "Plea agreements are contractual in nature. In interpreting and enforcing them, we are to use the traditional principles of contract law." United States v. Robinson, 924 F.2d 612, 613 (6th Cir.1991). This court has held that the issue of content of a plea bargain between the defendant and the government "is a question of fact to be resolved by the district court. Those findings are reviewed under a clearly erroneous standard on appeal." Id.
 
 
 8
 Sizemore's plea agreement could not possibly have prevented the sentencing court from considering total losses. The first sentence of the Plea agreement makes clear that the agreement is subject to the provisions of U.S.S.G. Chapter 6, Part B, which states in relevant part:
 
 
 9
 [A] plea agreement that includes the dismissal of a charge or a plea agreement not to pursue a potential charge shall not preclude the conduct underlying such charge from being considered under the provisions of Sec. 1B1.3 (Relevant Conduct) in connection with the count(s) of which the defendant is convicted.
 
 
 10
 U.S.S.G. Sec. 6B1.2(a). This Guidelines provision "prevents a plea agreement from restricting consideration of conduct that is within the scope of Sec. 1B1.1 ... in respect to the count(s) of which the defendant is convicted; it does not in any way expand or modify the scope of Sec. 1B1.1...." U.S.S.G. Sec. 6B1.2(a) p.s.
 
 
 11
 Moreover, Sizemore's plea agreement specifically states
 
 
 12
 [t]his document is the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and defendant in this case, and ... supersedes all prior understandings, if any, whether written or oral, and cannot be modified other than in writing that is signed by all parties or on the record in Court. No other promises or inducements have been or will be made to defendant in connection with this case, nor have any predictions or threats been made in connection with this plea.
 
 
 13
 J.A. 61.
 
 
 14
 Accordingly, the sentencing court could not have erred by failing to enforce promises that were not and could not have been included in the plea agreement.
 
 III.
 
 15
 Sizemore next argues that it was clear error for the lower court to consider as relevant conduct all of the fraudulent transactions of her co-conspirators and the resulting total losses of $19,299.35. According to Sizemore, the only conduct which should be considered relevant is the transactions which she was personally involved with--i.e., those transactions which she facilitated or directly benefitted from.
 
 A.
 
 16
 "Whether an activity is considered "relevant conduct" under the Sentencing Guidelines is a question of fact which should not be disturbed unless found to be clearly erroneous." United States v. Kappes, 936 F.2d 227, 229 (6th Cir.1991). "The goal of the relevant conduct provision is to allow a court to impose sentences commensurate with the gravity of the offense." Id.
 
 
 17
 "Section 1B1.3(a)(2) of the Guidelines states that the base offense level 'shall be determined on the basis of ... all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction.' " Kappes, 936 F.2d at 229; U.S.S.G. Sec. 1B1.3(a)(2). Under this provision, the sentencing court may consider certain uncharged relevant conduct when determining the applicable base offense level and when calculating adjustments. Relevant conduct includes the offenses of others, whether or not charged as a conspiracy, if the conduct was both in furtherance of and reasonably foreseeable in connection with, the criminal activity that was jointly undertaken by the defendant. See U.S.S.G. Sec. 1B1.3, comment. (n. 2).
 
 
 18
 "In determining the scope of the criminal activity that [a] defendant agreed to jointly undertake" the relevant conduct provision to the Guidelines directs sentencing courts to "consider any explicit or implicit agreement that can be fairly inferred from the conduct of the defendants and others." Id. Moreover, "with respect to offenses involving contraband ..., the defendant is accountable for all quantities of contraband with which [s]he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of criminal activity that [s]he jointly undertook." Id.
 
 
 19
 Accordingly, contrary to Sizemore's argument, a sentencing court has authority to hold a criminal defendant responsible for losses resulting from the actions of co-conspirators, assuming the record supports a finding that those losses were reasonably foreseeable at the time the defendant agreed to undertake the joint criminal activity.
 
 B.
 
 20
 Sizemore argues, however, that the sentence should be vacated and the case should be remanded because the lower court failed to state specific findings regarding her conduct and the foreseeability of the losses resulting from the actions of her co-conspirators.
 
 
 21
 In adopting the findings of the PSR, the sentencing court failed to make clear the relationship of Sizemore to the overall conspiracy, as the PSR neglected to make such particularized findings. The PSR describes the initial criminal undertakings of Melissa Sizemore, William and Mickie White, B.J. Boggs, and the other conspirators, but it does not indicate who, if anyone, was the leader of the conspiracy and what the structure of the operation was. Thus it is not clear whether Sizemore's association with Mickie White was distinct from her co-conspirators' association with Mickie White. If this is the case, this conspiracy would be somewhat analogous to the following scenario, described in the Commentary to U.S.S.G. Sec. 1B1.3, in which the defendant is not accountable for the conduct of others:
 
 
 22
 Defendant P is a street-level drug dealer who knows of other street level drug dealers in the same geographic area who sell the same type of drug as he sells. Defendant P and other dealers share a common source of supply, but otherwise operate independently. Defendant P is not accountable for the quantities of drugs sold by the other street level dealers because he is not engaged in a jointly undertaken criminal activity with them. In contrast, Defendant Q, another street-level drug dealer, pools his resources and profits with four other street-level drug dealers. Defendant Q is engaged in a jointly undertaken criminal activity and, therefore, he is accountable under subsection (a)(1)(B) for the quantities of drugs sold by the four other dealers during the course of his joint undertaking with them because those sales were in furtherance of the jointly undertaken criminal activity and reasonably foreseeable in connection with that activity.
 
 
 23
 U.S.S.G. Sec. 1B1.3 comment. (n. c-6).
 
 
 24
 The record before this court could reasonably lead to the conclusion that each defendant was separately supplied credit card numbers by the Whites, making Sizemore's relationship to the conspiracy similar to Defendant P's relationship to his supplier and the other area street-dealers. Of course, reasonable inferences drawn from the record could also lead to the conclusion that Sizemore's actions were in furtherance of criminal activities jointly undertaken with all of the conspirators. The PSR by itself, however, is an insufficient basis from which to drive at either conclusion or to conclude that the co-conspirators' actions were reasonably foreseeable. Because the trial court did not make clear the basis for its sentencing decision, it is not possible for this court to fairly determine whether clear error occurred.
 
 
 25
 In similar cases, this court has found that a remand is required for findings of fact to support the district court's decision to hold the defendant accountable for the acts of codefendants. See United States v. Blankenship, 954 F.2d 1224, 1228 (6th Cir.) (remanding for findings of fact to support district court's decision to include amount of cocaine possessed by codefendant in defendant's base offense level), cert. denied, 113 S.Ct. 288 (1992). We believe a remand is appropriate here.
 
 IV.
 
 26
 Wherefore, we VACATE Sizemore's sentence and REMAND with instructions that the lower court make findings of fact with respect to Sizemore's precise relationship to the overall conspiracy and/or the foreseeability of her co-conspirators' conduct.
 
 
 
 [1]
 In addition to Defendant Appellant Melissa K. Sizemore, the indictment also named George L. Adams, Betty Jean Boggs, Denise Owens, Mickie T. White and William T. White
 
 
 [2]
 The United States Attorney's Office's and Secret Service's investigation into the credit fraud revealed the following fraudulent purchases from stores located in London, Corbin and Lexington, Kentucky: $5646.65 from Belk's; $5942.60 from Bob's Ready-to-Wear; $558.58 from Circle J. Western Wear; $88.62 from Cracker Barrel; $490.72 from Dawahare's; $5672.06 from J.C. Penney's; $62.44 from Red Lobster; and $837.68 from Wal-Mart. Thus, the total fraud was $19,299.35
 3 U.S.S.G. 2F1.1(b)(1) states as follows:
 (1) If the loss exceeded $2,000, increase the offense level as follows:
 Loss (Apply the Greatest) Increase in Level
 (A) $2,000 or less no increase
 (B) More than $2,000 add 1
 (C) More than $5,000 add 2
 (D) More than $10,000 add 3
 (E) More than $20,000 add 4
 ...