NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0040n.06
Filed: January 20, 2009

No. 08-5118

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CORNELIUS EASLEY, | ) | WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: SUHRHEINRICH, BATCHELDER and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Cornelius Easley appeals his 360-month sentence for possessing crack cocaine and other drugs with the intent to distribute them. Because the district court did not err in calculating his advisory sentencing-guidelines range, we affirm.

I.

On February 16, 2006, members of a DEA task force arrested Easley after watching him take part in an attempted drug sale. They found crack cocaine and other drugs on him and discovered more drugs, scales, a cooking tube, two handguns and a large quantity of cash in his home. In July 2006, a federal grand jury indicted Easley for possessing with intent to distribute at least 50 grams of crack cocaine and unspecified amounts of hydrocodone and marijuana. See 21 U.S.C. § 841(a)(1).

The drugs seized during the February 2006 arrest, as it turns out, scratched the surface of Easley's drug trade. As Easley admitted to investigators in October 2006, he had been selling drugs

for more than two decades. While he had sold a variety of drugs to his customers over the years, crack long had been his best seller. During one fifteen-year stretch, he sold four ounces (roughly 113 grams) of crack every week. Even the February arrest and July indictment did not curb his business: By the time he met with the investigators, eight months after his arrest, he had been caught three more times selling crack and other drugs, each time resulting in a separate state-court indictment.

In August 2007, Easley pleaded guilty to the federal charges stemming from the February 2006 arrest. In calculating his advisory sentencing-guidelines range, the presentence report (PSR) considered the drugs seized in connection with the February arrest and his earlier drug sales dating back to 1988. Taking Easley at his word, the PSR added up Easley's estimates of prior weekly sales, attributing to him total sales of over 83 kilograms of crack along with sales of other drugs.

Over Easley's objection, the district court accepted the PSR's drug-quantity finding. After addressing the statutory sentencing factors, *see* 18 U.S.C. § 3553(a), the court imposed a bottom-of-the-guidelines sentence of 360 months.

## II.

In appealing his sentence, Easley argues that the district court miscalculated the guidelines range, which (if true) generally would establish that the sentence was procedurally unreasonable. *See Gall v. United States*,128 S. Ct. 586, 596–97 (2007). As Easley sees it, the court's drug-quantity equation should not have included his earlier drug sales for two reasons: (1) They do not constitute "relevant conduct" under the guidelines, *see* U.S.S.G. § 1B1.3, and (2) the only evidence of the sales—Easley's account during the October 2006 interview—is unreliable, principally because it failed to account for his time in prison. We give fresh review to the district court's interpretation

of the meaning of "relevant conduct" and review its factual findings for clear error. *See United States v. Maken*, 510 F.3d 654, 656–57 (6th Cir. 2007).

A.

One component of the sentencing calculus in a drug-trafficking case is the quantity of drugs involved, which requires the district judge to distinguish between drug-related activities that constitute "relevant conduct" (which affect the offense level) and unrelated misdeeds (which do not). *See United States v. Gill*, 348 F.3d 147, 149, 151–52 (6th Cir. 2003). As the guidelines explain, "quantities and types of drugs not specified in the count of conviction" must be included in the drug-quantity equation "if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." U.S.S.G. § 1B1.3 background note; *see United States v. Smith*, 245 F.3d 538, 544 (6th Cir. 2001). Prior drug transactions satisfy that standard if they are "substantially connected" to the offense of conviction "by at least one common factor, such as . . . common accomplices, common purpose, or similar modus operandi," U.S.S.G. § 1B1.3 n.9(A), or if they "are part of a single episode, spree, or ongoing series of offenses," taking into account the "degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses," *id.* § 1B1.3 n.9(B); *see also United States v. Hill*, 79 F.3d 1477, 1481–82 (6th Cir. 1996).

The district court legitimately concluded that Easley's prior drug transactions involved the same course of conduct as his crime of conviction. Easley pleaded guilty to possessing with intent to distribute crack and hydrocodone—the same two drugs he told investigators he had been peddling steadily since the mid-1980s. The drug paraphernalia found at his home—equipment, guns and

cash—confirmed that his business was ongoing and thriving, and so did his three state-law arrests after the federal indictment. Even though the PSR provides few details about the prior drug deals, Easley's own description of them establishes their similarity and regularity.

Easley's rejoinder is that the length of time between the first drug sales, which date back to 1988, and his offense stretches "relevant conduct" to the breaking point. Even shorter gaps between the offense of conviction and similar prior misdeeds, we have held, can break the common-plan or course-of-conduct link. *See, e.g.*, *United States v. Kappes*, 936 F.2d 227, 230–31 (1991) (holding that two instances of disability-benefits fraud six years apart were not part of the same course of conduct or common plan such that the first fraud could not constitute relevant conduct in sentencing the defendant for the second). But as *Kappes* and common sense tell us, two isolated offenses separated by a several-year delay differ from a long-running drug-distribution business operated by the same defendant for over a decade. *See id.* at 230. Doubtless, a time lapse between a defendant's first drug deal and the one that leads to his conviction may make it harder for the government to prove the facts of the earlier acts. But to the extent those acts are part of one steady, continuous pattern, a longer time span makes it more, not less, likely that the acts involve the same course of conduct. The district court did not err in considering Easley's earlier drug transactions in its drug-quantity calculation.

## B.

But even if these earlier drug transactions may be considered relevant conduct as a matter of law, Easley argues that the district court clearly erred as a matter of fact in making the drug-quantity calculations. Easley takes issue not with the district court's arithmetic but with the reliability of the

evidence purporting to support its figures because (1) his statement to investigators—describing the amount of crack he sold per week between 1988 and 2005—does not supply adequate evidence to support the court's drug-quantity calculation, and (2) the district court's addition of prior drug sales based on this estimate did not account for the fact that Easley had been arrested several times in that period and had spent roughly six years between 1988 and 2005 behind bars.

That the district court accepted the PSR's account of Easley's prior acts, which in turn summarized what Easley told investigators, without hearing other evidence does not undermine its decision. In determining drug quantities, as in determining other sentencing facts, a "district court may rely on any competent evidence in the record" so long as it "ha[s] some minimum indicium of reliability beyond mere allegation." *United States v. Hough*, 276 F.3d 884, 891 (6th Cir. 2002) (internal quotation marks omitted); *see also* 18 U.S.C. § 3661; U.S.S.G. § 6A1.3(a). An unrebutted statement by the *defendant* generally will satisfy this requirement. *See Gill*, 348 F.3d at 156.

Nor does it make a difference that Easley described his previous practices in an interview with the police, as opposed to testifying at the sentencing hearing or submitting a notarized written statement. A party admission is not hearsay, and at any rate the rules of evidence generally do not apply to sentencing hearings. *See* Fed. R. Evid. 801(d)(2)(A), 1101(d)(3); *United States v. Hamad*, 495 F.3d 241, 246 (6th Cir. 2007). A district court thus may consider hearsay statements contained in a PSR if they bear indicia of reliability and the court gives the defendant an opportunity to rebut them. *See United States v. Silverman*, 976 F.2d 1502, 1511–13 (6th Cir. 1992) (en banc); *see also United States v. Katzopoulos*, 437 F.3d 569, 574–76 (6th Cir. 2006). The district court gave Easley a chance to rebut or alter his statement, but aside from contesting the reliability of his own

recollection in general terms, he neither presented any evidence of his own nor identified a specific, material inaccuracy in the PSR's summary of what he said. *See United States v. Swanberg*, 370 F.3d 622, 625 (6th Cir. 2004). He thus has no reason to complain about the district court's decision to accept his unrebutted account.

The district court's failure to account for Easley's six years of prison time during these 17 years of drug trafficking is a trickier matter. Whether Easley temporarily suspended his drug dealing while incarcerated, as he implies, or whether he continued to sell drugs through outside associates or "resumed selling with a vengeance" (to make up for lost sales) after his release, as the government speculates, Br. at 20, it is odd that the PSR and the district court never mentioned the point. Of course, Easley and his counsel share some of the blame because they did not mention it either in their written objections to the PSR or at the sentencing hearing; they argued more generally about the unreliability of Easley's memory. But we need not decide whether plain error applies because any apparent error could not have made a difference in Easley's sentence.

A sentencing mistake is harmless when the record establishes that the district court would have imposed the same sentence with or without the error. *See United States v. Alford*, 436 F.3d 677, 682–83 (6th Cir. 2006); *see also United States v. Anderson*, 526 F.3d 319, 330 (6th Cir. 2008). Drug-quantity miscalculations that do not affect the defendant's guidelines range often fall into that category. *See United States v. Charles*, 138 F.3d 257, 268 (6th Cir. 1998); *United States v. Hettinger*, 242 F. App'x 287, 296 (6th Cir. 2007). The guidelines after all contemplate something less than mathematical precision in this area, allowing a district court to "estimate" the quantities

involved when police do not recover the drugs at issue. U.S.S.G. § 2D1.1 n.12; *see also Anderson*, 526 F.3d at 326.

In this case, as the district court appreciated, the amount of drugs so far exceeded the threshold for the highest tier of the drug-quantity table that even excluding a great deal of them would not have affected Easley's offense level. Setting aside the other drugs Easley was pushing, his offense level would have reached the highest rung of the drug-quantity ladder even if the court had attributed 4.5 kilograms (as opposed to 83 kilograms) of crack to him—under the guidelines then in effect. *See* U.S.S.G. § 2D1.1(c)(1) (2007); *cf.* U.S.S.G. § 2D1.1(c)(1) (2005) (requiring only 1.5 kilograms of crack to reach the highest offense level). Moving that much merchandise would be no small feat for most sellers. But at the rate Easley acknowledged he was selling crack for well over a decade, he would have reached that amount in just over nine months. At Easley's pace, even if one excludes the time he was incarcerated, the amount of crack he sold would surpass the threshold for the highest guidelines range nearly thirteen times over. And even if the court had counted only the time since 1997 when Easley ended his last lengthy stay in prison (on the theory that activities before that imprisonment are too remote to be relevant conduct), he still would have sold over nine times the minimum needed to make it to the top tier of the drug-quantity table. Correcting the district court's mistake—if a mistake it was—would not have affected his advisory offense level.

Nor is there any other reason to think that this correction would have affected his sentence. To the contrary: the court noted that, had the range not been so high already, it "would probably [have] adjust[ed] the range up," but it was "not necessary to do that in this case because of the very

high range." JA 60. The court's failure to account for Easley's imprisonment could not plausibly have affected his sentence, making any potential error harmless.

III.

For these reasons, we affirm.