**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James F. MOORED, Defendant–
Appellant.**

No. 92–1823.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 23, 1993.

Decided June 14, 1993.

Julie Ann Woods, Asst. U.S. Atty. (argued and briefed), Grand Rapids, MI, for plaintiff-appellee.

David A. Dodge (argued and briefed), Grand Rapids, MI, for defendant-appellant.

Before: KENNEDY and BATCHELDER, Circuit Judges; and BECKWITH, District Judge.*

BECKWITH, District Judge.

Defendant, James Moored, appeals the June 24, 1992 judgment of the United States District Court for the Western District of Michigan, pursuant to which that court sentenced Defendant to a term of 27 months imprisonment. Specifically, Defendant appeals the district court's consideration of certain uncharged conduct in the calculation of his sentence. Defendant also challenges two enhancements to the sentence and the refusal of the court to reduce the offense level for acceptance of responsibility. Finally, Defendant appeals the court's failure to depart downwardly for his recent efforts to pay off his debts.

## I.

In early 1990, Defendant applied for loans in the total amount of $1,750,332 from various private lenders. Defendant indicated to the lenders that $400,000 of the loan proceeds would be used to pay a debt owed to Jordan College, a small institution in Grand Rapids, Michigan. Defendant had an active history with the college, including a term on its board of trustees. He had engaged in various financial transactions with the college, including loans, donations, and real property transactions, based in part on promises that he failed to keep and representations that proved untrue.

The debt to Jordan College was comprised of a $100,000 loan that the college made to Defendant, a $50,000 undisclosed lien on property that Defendant sold to the college, and a $175,000 downpayment on that same property that Appellant had promised to return to the college.

In order to entice the lenders, Defendant falsified an offer to purchase stock that Defendant had pledged as security for the loan.

* The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation.

Defendant transmitted the falsified offer from outside the state of Michigan by facsimile to the lenders' counsel in Michigan. Defendant also falsified a letter of credit from Northwest Bank.

Immediately after the two checks comprising the loan were transferred to Defendant, the lenders learned of the fraud and stopped payment. The lenders suffered no actual loss.

Defendant pled guilty to a one-count information pursuant to a plea agreement. The government agreed that the potential loss to the lenders was less than $350,000, which would result in an offense level enhancement of eight levels, according to § 2F1.1(b)(1)(I) of the United States Sentencing Guidelines ("U.S.S.G."). The basis for that calculation was the actual value of the stock pledged as security compared to the value fraudulently attributed to the stock by Defendant when applying for the loans. The parties to the agreement further stated that Defendant had accepted responsibility for the offense and that a two-level decrease in the offense level was appropriate pursuant to U.S.S.G. § 3E1.1. The government agreed not to seek any additional increases in the offense level. Accordingly, Defendant asserted that his total offense level should be twelve, and the government agreed not to oppose that position.

The probation officer agreed that the base offense level was six, pursuant to U.S.S.G. § 2F1.1. In addition, the officer recommended an enhancement of twelve levels, pursuant to U.S.S.G. § 2F1.1(b)(1)(M), finding the potential or intended loss to be $1,500,000 to $2,000,000. That calculation was purportedly based on the amount of the loans added to the amount owed to Jordan College.[1]

The probation officer further recommended a two-level increase, pursuant to U.S.S.G. § 3B1.3, for the abuse of Defendant's position of trust with Jordan College, and a two-level enhancement for more than minimal planning, pursuant to U.S.S.G. § 2F1.1(b)(2)(A). Thus, the probation officer

calculated the total offense level to be 22, which, when coupled with Defendant's criminal history category of I, yielded a sentencing range of 41 to 51 months.

At sentencing, the district court found the amount of the loss to be $325,000, which represented only Defendant's debt to Jordan College. The court found as follows:

> ... that the losses as that loss is commonly understood for purposes only of specific offense characteristics should not include the whole deduct amount of $1,700,000. That may in fact have a bearing upon the nature and the scope of the offense, but as a loss characteristic, this Court finds that the loss characteristic that should be used for purposes of calculation is the loss in the relevant conduct, which is the loss to Jordan College that was so intertwined in this particular transaction as to find great difficulty in segregating it or separating it. I find they were all part of the scheme and plan of this Defendant to aggrandize himself and his enterprises at the expense of other persons and other entities.

*Joint Appendix* at pages 90–91. On that basis, the court enhanced the offense level by eight.

The district court added two two-level enhancements. The first two-level enhancement was for abuse of a position of trust. The court stated as follows:

> This Court finds that replete throughout this entire Presentence Report, beginning in Paragraph 13 all the way through Paragraph, virtually, 27, all the way through the paragraphs setting forth the factual basis, that the Defendant's position as a trustee of Jordan College and as an intimate of Jordan College was used for the purposes of bolstering the Defendant's credibility with the investors. I'm using my own words rather than the legal terminology that is required to be used, but it is basically the same thing, and that is he used his position as a trustee for Jordan College to assist in obtaining the credit and money, part of which he was to use for

---

1. Our addition of the amount owed to Jordan College to the amount of the loans yields a sum

just over $2,000,000.

his own personal use or—let me say it another way.

Mr. Moored's affiliation with Jordan College as an officer, trustee, and/or affiliate was used to facilitate the commission of the fraudulent documents that were sent through the wire, and therefore, the two-point addition under 3B1.3 is clearly in order in this particular matter. This isn't even a close call in this particular matter.

*Joint Appendix* at page 95.

The second two-level enhancement was for more than minimal planning, pursuant to U.S.S.G. § 2F1.1(b)(2)(A). No discussion of this enhancement was made upon the record, and it appears that the district court merely adopted the recommendation of the probation officer.

The district court determined that a two-level reduction in the offense level for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, was not warranted. The court stated as follows:

I have an associate who looks at contrition and says unless there's real contrition, moral contrition, he will not accept it. I'm not sure I define it that way, but I saw at the time the plea was entered on the 15th of April and I see in the Presentence Report here an attempt to, and I heard a lot of it this afternoon, an attempt to paint this particular matter as a business transaction that went awry and nobody intended to commit any fraud on anybody else, everybody got their money back, what happened was things just didn't fall into place, things just didn't come together.

I see an individual before me here, and gathering from the reports, I have before me an individual before me who's very sorry what happened happened. He's very sorry that he got into this trouble and caused an embarrassment to himself and his family, and he's entered a guilty plea for it. But that stops short of being the acceptance of responsibility standard which the federal courts require.

*Joint Appendix* at page 100.

Finally, the district court refused to depart from the Sentencing Guidelines range based on Defendant's extraordinary efforts to repay creditors. The record reflects that those efforts included the sale of most of Defendant's assets and the pledging of most of his future income. The district court stated as follows:

The Court is called upon at this time to impose sentence. The so-called guidelines here give the Court a framework. A departure therefrom is only under unique circumstances that fall outside the subject matters of the guidelines, and frankly, there aren't any in this particular case. This Court was searching for them and there aren't any.

*Joint Appendix* at pages 107–108.

The issues on appeal are best summarized and separated as follows:

A. Was the district court precluded by the plea agreement from making a different calculation of the offense level from that agreed upon by the parties?

B. Did the district court err in concluding that Defendant's transactions with Jordan College should be considered relevant conduct for purposes of determining the amount of loss?

C. Did the district court err by enhancing the offense level for abuse of a position of trust?

D. Did the district court err by enhancing the offense level for more than minimal planning?

E. Did the district court err by failing to grant a two-level reduction for acceptance of responsibility?

F. Did the district court err by concluding that it could not depart from the Guidelines range on the basis of Defendant's extraordinary efforts to repay creditors?

## II.

Rule 11(e)(1)(B) of the Federal Rules of Criminal Procedure provides that the parties in a criminal action may make agreements that will be binding in effect upon the government but "with the understanding that such recommendation or request shall not be binding upon the court." Rule 11 further provides in (e)(4) that if the

court rejects the plea agreement in a manner that is detrimental to the defendant, the defendant may withdraw his plea. Defendant does not argue in this matter that the district court erred by failing to allow him to withdraw his plea, and Defendant does not ask that this case be remanded for the district court to readvise him of his right to withdraw his plea. Rather, the gist of Defendant's appeal appears to be that the Court should be bound by the plea agreement.

Defendant cites *United States v. Silverman,* 889 F.2d 1531 (6th Cir.1989), as authority from this circuit for the proposition that the district court does not have unlimited authority to reject the terms of a plea agreement. One major difference between the *Silverman* case and the instant matter is that in *Silverman* the defendant had attempted to withdraw his guilty plea after he realized that the court might reject certain terms of the agreement. The court had refused to allow the defendant to withdraw his plea, and this Court remanded for the district court to indicate its reasons for doing so. *Id.* at 1540.

In this case, Defendant did not express a desire to withdraw his guilty plea and does not indicate on appeal that he would have withdrawn the plea had the opportunity been presented. Accordingly, this case is significantly different from *Silverman* where the lower court refused the defendant's request to withdraw his plea. We do not find that the district court erred by refusing to accept the parties' calculations as set forth in the plea agreement. Further, we find no error in the district court's failure to explicitly offer Defendant the opportunity to withdraw his plea, given that Defendant did not ask to do so and has not stated that he would have done so if the opportunity had been presented.

### III.

■ Defendant argues that his transactions with Jordan College are not relevant conduct. The importance of the district court's inclusion of those activities in the calculation of the loss in this case lies in the fact that the district court found that no actual loss resulted from the offense of conviction. The court based the eight-level enhancement for the amount of the loss solely on Defendant's transactions with Jordan College. That enhancement had the effect of raising Defendant's final sentencing range from six to twelve months to 27 to 33 months.

Section 1B1.3 of the Sentencing Guidelines provides the framework for consideration of relevant conduct in the computation of offense level. Pursuant to U.S.S.G. § 1B1.3(a)(2), which applies to Defendant's offense, the court may consider all acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction. Applying that standard, we find that Defendant's conduct in relation to Jordan College was not part of the same course of conduct or common scheme or plan as the offense conduct.

■ We agree with the parties that the district court's findings with respect to relevant conduct should not be disturbed unless they are clearly erroneous. *United States v. Miller,* 910 F.2d 1321, 1327 (6th Cir.1990), *cert. denied,* 498 U.S. 1094, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991). This Court's decision in *United States v. Kappes,* 936 F.2d 227 (6th Cir.1991), provides guidance in the application of U.S.S.G. § 1B1.3 to fraud cases. In that case, this Court held that the purpose "of the relevant conduct provision is to allow a court to impose sentences commensurate with the gravity of the offense." *Id.* at 229.

In the *Kappes* case, the panel reviewed the sentence of a defendant who was convicted of making false statements in 1989 under the Federal Employees Compensation Act. The district court had considered as relevant conduct the defendant's omission of a prior back injury from his medical history form when he was hired in 1983. The district court apparently found the conduct to be relevant because that conduct had placed the defendant in the position to later defraud the government.

The *Kappes* court reiterated that the district courts may properly consider conduct that is not charged in the indictment when computing a base offense level. *Id.* at 229. The court recognized that the conduct must be part of the same scheme or plan. *Id.* at

230. In questioning the propriety of the enhancement, the court stated as follows:

Kappes committed two similar offenses six years apart. The fact that Kappes may not have been in a position to commit the second offense if he had not committed the first offense does not, by itself, make the second offense "part of the same course of conduct or common scheme or plan" as the first offense.

*Id.* The court concluded that the conduct was not relevant and that the district court had committed clear error. The *Kappes* court found that the district court's reasoning impermissibly stretched the imagination. *Id.* at 231.

The government must prove relevance by a preponderance of the evidence. *United States v. Robison,* 904 F.2d 365, 371 (6th Cir.1990), *cert. denied,* 498 U.S. 946, 111 S.Ct. 360, 112 L.Ed.2d 323 (1990). We agree with Defendant that the government did not carry its burden in this case. Clearly, the events considered relevant conduct by the district court in this matter are not separated in time to the extent that the events in *Kappes* were. The temporal distance is approximately four months. Further, it appears that one of the purposes for the loan was to repay the debt to Jordan College. Nevertheless, we find that the district court committed clear error by including the amount of the "loss" to Jordan College in the computation of Defendant's total offense level.

We cannot agree with the district court's determination that Defendant's activities with the college were part of the same course of conduct as the offense conduct or of a common scheme or plan. The connection between the events is simply too tenuous for the district court to have properly included the potential loss to the college in the computation of the total loss. As did the *Kappes* panel, we find that the district court's reasoning impermissibly stretches the imagination.

### IV.

■ Section 3B1.3 of the Sentencing Guidelines provides as follows:

If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels.

*Application Note* 1 to that section states the following:

The position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons.

In this matter, the district court found that because of his position with Jordan College, Defendant appeared to the victims to be a better candidate for a loan than most people. Accordingly, the court found that Defendant had abused his position of trust with Jordan College.

Defendant recognizes that the district court's findings of fact will be reversed only for clear error. Nevertheless, Defendant argues for a *de novo* review based on a finding that the lower court has misinterpreted the "significant facilitation" standard. Defendant argues that the district court's interpretation of that standard would permit an enhancement for any defrauding borrower who, in the course of loan negotiations, discloses a position of trust, even if that position had nothing to do with the loan decision. In support of that argument, Defendant cites a Seventh Circuit case in which that court reviewed the sentence of a merchant who had defrauded a bank with which he had a credit processing arrangement. *United States v. Kosth,* 943 F.2d 798 (7th Cir.1991).

In *Kosth,* the defendant had falsified $30,000 worth of credit card receipts, and the sentencing court had enhanced his offense level for abuse of a position of trust. The Seventh Circuit reversed, finding that the defendant's position was not different from any other merchant's.

Defendant argues that his position was no different from any other loan applicant's. He cites a crucial difference between his situation and the one in the *Kosth* case. In that case, the position of trust was with the victim of the offense of conviction. In Defendant's case, the position of trust was with a

third party. Defendant also cites, for purposes of comparison, the Sixth Circuit case of *United States v. Sivils*, 960 F.2d 587 (6th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 130, 121 L.Ed.2d 84 (1992).

In the *Sivils* case, the defendants were special deputy sheriffs who engaged in criminal conduct related to their positions. In that case, the position of trust occupied by the defendants was with the victim of their offenses, the government. Defendant argues that his case is different in that the victim was a third party. The *Kosth* and *Sivils* courts said nothing about the situation in which a defendant has abused a position of trust with someone other than the victim of the charged conduct.

We find the district court's approach to the position of trust enhancement to be overly broad. Applying the standard that the lower court applied, a sentencing court would enhance the sentence of virtually every defendant who occupied any position of trust with anyone, victim or otherwise. An argument could be made in virtually every case that the position of trust, though not directly a part of the offense conduct, had some remote connection with the defendant's crime.

■ In order for the abuse of a position of trust enhancement to be applied to a defendant, the evidence must show that the defendant's position with the victim of the offense significantly facilitated the commission of the offense. In this case, the Defendant held no position of trust with the intended victims of his offense. Accordingly, we find that the district court incorrectly enhanced Defendant's offense level.

### V.

■ Defendant also argues that the district court erred by enhancing his offense level, pursuant to U.S.S.G. § 2F1.1(b)(2)(A), for more than minimal planning. Defendant argues that his fraudulent acts involved no more planning than is required to commit the offense of conviction.

We agree with the district court that Defendant engaged in more than minimal planning. Defendant did not merely misrepresent his assets in a loan application, although that act alone would have supported his conviction. Rather, he concocted a plan to defraud the lender-victims by supplying a forged letter of credit and a phony purchase offer for his stock. The enhancement for more than minimal planning is supported by the evidence and is clearly appropriate in Defendant's case.

### VI.

■ Defendant argues that the district court erred by refusing to decrease his offense level by two, pursuant to U.S.S.G. § 3E1.1, for acceptance of responsibility. *Application Note* 1 to § 3E1.1 sets forth numerous indicia of a defendant's acceptance of responsibility. Those factors include the timeliness of a guilty plea, cooperation with law enforcement, voluntary payment of restitution, and post-offense rehabilitative efforts.

■ *Application Note* 5 to the same section states as follows:

The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review.

That standard has been adopted by case law. *See, e.g., United States v. Chambers*, 944 F.2d 1253, 1270 (6th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1217, 117 L.Ed.2d 455 (1992). The burden of proof is on a defendant to show that he is entitled to a reduction based on acceptance of responsibility. *United States v. Wilson*, 878 F.2d 921, 923 (6th Cir.1989).

In this case, the district court appears to have relied, to some degree, on Defendant's incomplete acceptance of responsibility for his conduct with Jordan College. We have found that conduct to be irrelevant for sentencing purposes. Furthermore, this Court has recently held that the inquiry is limited to "acceptance of the offense of conviction" not for illegal conduct generally. *United States v. Morrison*, 983 F.2d 730 (6th Cir. 1993). Accordingly, the district court must reconsider the acceptance of responsibility issue excluding from consideration Defendant's conduct in connection with Jordan College.

## VII.

Defendant's final challenge is to the district court's failure to grant a downward departure from the Sentencing Guidelines range based upon Defendant's considerable efforts to repay creditors. The parties agree that the decision whether to depart rests exclusively with the sentencing court. The decision can be reviewed only when the appellate court is convinced that the sentencing court has misapprehended its authority. Accordingly, the task before the appellate panel in this matter is to determine whether the language employed by the court in addressing the requested departure manifests a misunderstanding of the court's authority under the Sentencing Guidelines.

We are not persuaded that the district court misapprehended its authority to depart downwardly. The court articulated its awareness of the Sentencing Guidelines provisions governing downward departures. The court specifically rejected Defendant's argument that he was entitled to a departure based on factors not adequately considered by the Guidelines. The court did not say that it was legally prevented from departing but stated that it found no factual basis for a departure. Having concluded that the district court fully understood its authority to depart, our review of the district court's failure to depart is complete.

## VIII.

For the foregoing reasons, the judgment of the district court is vacated, and this case is remanded for resentencing according to law and consistent with this opinion.