25 F.3d 1051
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Charles HAMBERLIN and Reynaldo Payne, Defendants-Appellants.
 Nos. 93-3881, 93-3988 and 93-3883.
 United States Court of Appeals, Sixth Circuit.
 June 2, 1994.
 
 Before: MARTIN and JONES, Circuit Judges; and CONTIE, Senior Circuit Judge.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 Claiming that the district court erred in finding them each responsible for 100 grams or more of pure phencyclidine, commonly known as PCP, Charles Hamberlin and Reynaldo Payne appeal the sentences imposed by the district court for possession with the intent to distribute PCP.
 
 
 2
 * On the morning of July 9, 1992, Hamberlin and Payne travelled from Los Angeles, California, to Dayton, Ohio, aboard USAir Flight 614. Detective Kevin Bollinger of the Dayton Airport Drug Interdiction Unit observed that Hamberlin and Payne fit a common drug courier profile, and, once in Dayton, that they expressed inordinate concern regarding whether the two soft-sided bags they had checked with the airline would be transferred to their connecting flight to Cleveland, Ohio. After locating the bags in question, Bollinger felt their sides and determined that each contained several liquid-filled bottles. Aware that couriers from Los Angeles often transport PCP in liquid form in bottles, Bollinger telephoned Special Agent George Krebs, a Drug Enforcement Administration agent assigned to the Cleveland Hopkins Airport, conveyed the above information and descriptions of Hamberlin and Payne, and informed Krebs that the two men were aboard USAir Flight 4202 from Dayton to Cleveland.
 
 
 3
 In Cleveland, Hamberlin retrieved a brown suitcase, and Payne a gray shoulder bag. As they were exiting the baggage claim area, Krebs and several other DEA agents approached them and asked if they would mind speaking to the agents. In response to a question posed by an agent, Payne stated that Hamberlin was carrying both of their plane tickets. After obtaining consent from Hamberlin, the agents then searched both bags. Inside the suitcase, the agents found four thirty-two-ounce Listerine bottles and one six-ounce bottle. Two of the thirty-two ounce bottles and the six-ounce bottle were full of liquid, and the remaining two thirty-two ounce bottles were partially full. Inside the shoulder bag, the agents discovered four full thirty-two-ounce Listerine bottles of liquid. The agents then escorted Hamberlin and Payne to the airport police office, where Krebs field-tested the two partially full bottles that had been recovered from Hamberlin's suitcase. Both bottles tested positive for PCP. At this point, the agents placed Hamberlin and Payne under arrest.
 
 II
 
 4
 On August 5, a federal grand jury returned an indictment charging Hamberlin and Payne with one count of possession with the intent to distribute approximately 5,800 grams of a mixture containing a detectable amount of PCP, in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2. On January 7, 1993, following a hearing on a motion by defendants to suppress the evidence gathered as a result of the airport search of their luggage, the district court granted the motion with respect to the contents of the gray shoulder bag and denied the motion with respect to the contents of the brown suitcase. Hamberlin and Payne thereafter pled guilty to the indictment, specifically reserving the right to contest the amount of PCP attributable to them for sentencing purposes. In addition, Hamberlin successfully argued that this Court's decision in United States v. Nichols, 979 F.2d 402 (6th Cir.1992), cert. granted in part, 114 S.Ct. 39 (1993), precluded the use for sentencing purposes of the illegally seized bottles recovered from the gray shoulder bag carried by Payne.*
 
 
 5
 On May 13, the district court commenced a sentencing hearing to determine the amount of PCP for which the defendants were responsible. At the hearing, Special Agent Krebs testified that, although he recalled that the agents recovered the two partially full thirty-two-ounce bottles and the six-ounce bottle from Hamberlin's suitcase, he did not know which of the six remaining full thirty-two-ounce bottles were the two that had been taken from Hamberlin's suitcase, and which were the four that had been found in Payne's shoulder bag. After field-testing the two partially full bottles, Krebs explained, he individually packaged and weighed each of the nine bottles, and shipped them to a DEA laboratory in Chicago, Illinois.
 
 
 6
 Roger Fuelster, an expert in forensic chemistry from the Chicago lab, testified that after receiving and visually inspecting the evidence, he concluded on the basis of a gas chromatographic test that each of the nine bottles contained approximately the same concentration of PCP (i.e. within a probable range of 15%). PCP, Fuelster noted, is commonly transported in a liquid mixture, approximately 90% of the weight of which is non-ingested, toxic by-product and 10% consumable, or pure, PCP. Fuelster then combined the contents of the nine bottles and calculated the aggregate volume to be 6,500 milliliters, and the total liquid weight to be 5,814 grams. After conclusively identifying the presence of PCP by means of mass spectrometry, Fuelster determined that the combined solution contained 98 milligrams of PCP per milliliter. Accordingly, Fuelster concluded that the nine bottles contained a total of 637 grams of pure PCP.
 
 
 7
 The government then sought to establish the amount of pure PCP present in only those five bottles found in Hamberlin's suitcase. Fuelster testified that the combined weight of the contents of the two partially full thirty-two-ounce bottles, the six-ounce bottle, and the two lightest of the remaining six full thirty-two-ounce bottles was 2,260 grams, or 2.26 kilograms. Given Fuelster's earlier findings that the nine bottles contained an average of 98 milligrams per milliliter, and that each of the nine bottles contained approximately the same concentration of PCP, he further determined that the 2,260 grams of liquid in the five bottles recovered from the suitcase included approximately 225 grams of pure PCP.
 
 
 8
 At a sentencing proceeding on August 13, the district court agreed that the bottles in Hamberlin's suitcase contained 2,260 grams of liquid and 225 grams of pure PCP. The court, moreover, found that Hamberlin and Payne had engaged in a "co-joining of efforts in the transportation of this drug," and thus shared responsibility for each other's acts. Based only on the amount of PCP present in Hamberlin's suitcase, therefore, the court found both Hamberlin and Payne responsible for 100 grams or more of pure PCP, and, pursuant to 21 U.S.C. Sec. 841(b)(1)(A)(iv), sentenced each defendant to 10 years' imprisonment and five years of supervised release. This timely appeal followed.
 
 III
 
 9
 * Challenging the government's method of analyzing the contents of the bottles retrieved from their luggage, Hamberlin and Payne argue that the determination that the five bottles found in the brown suitcase carried by Hamberlin contained 225 grams of pure PCP was not supported by a preponderance of the evidence. This Court reviews a district court's factual findings regarding the amount of drugs for which a defendant is responsible for clear error. United States v. Baro, 15 F.3d 563, 568 (6th Cir.1994) (citing United States v. Walton, 908 F.2d 1289, 1300-01 (6th Cir.), cert. denied, 498 U.S. 906 (1990)). Moreover, "[f]or sentencing purposes, calculation of the amount of drugs involved in a crime must be supported by a preponderance of the evidence." Baro, 15 F.3d at 569. Where the exact amount of the drugs for which a defendant is responsible cannot be determined, an estimate will suffice, if supported by a preponderance of the evidence. Walton, 908 F.2d at 1308. Finally, "when choosing between a number of plausible estimates of drug quantity, none of which is more likely than not the correct quantity, a court must err on the side of caution." Id.
 
 
 10
 Here, the government could not determine the precise amount of pure PCP in each of the nine bottles, nor could it identify which two of the six full thirty-two-ounce bottles submitted to the DEA lab came from the suitcase. The government did establish, however, that each of the nine bottles contained approximately the same amount of pure PCP (i.e. within a probable 15% range). Additionally, when faced with a lack of persuasive evidence on the issue of the identification of particular bottles, the government erred on the side of caution and utilized the lightest two of the six possible bottles in estimating the weight of the two full thirty-two-ounce bottles recovered from the suitcase. Under these circumstances, the district court, in crediting the government's calculations as to the quantity of PCP present in the suitcase, properly protected the "defendants from being held responsible for drug quantities in excess of the amounts for which they are more likely than not responsible." Walton, 908 F.2d at 1302. Thus, the district court did not err in finding by a preponderance of the evidence that Hamberlin's suitcase contained 225 grams of pure PCP.
 
 
 11
 As we conclude that the district court did not err in finding that the amount of PCP in Hamberlin's suitcase alone supported the imposition of the ten-year minimum sentence required by Section 841(b)(1)(A)(iv), we need not address the district court's failure to consider the suppressed bottles--found in the shoulder bag--in its sentencing deliberations. Accordingly, we also need not consider defendants' further arguments that the rule announced in Jenkins, 4 F.3d at 1345, concerning the attribution to defendants for sentencing purposes of suppressed amounts of drugs, should not be applied to this case.
 
 B
 
 12
 Hamberlin and Payne next contend that their sentences were imposed as a result of an incorrect application of U.S.S.G. Sec. 1B1.3, the relevant conduct provision. Under Section 1B1.3, a defendant is responsible for conduct of others "that was both: (i) in furtherance of the jointly undertaken criminal activity; and (ii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. Sec. 1B1.3, comment. (n. 2) (interpreting Sec. 1B1.3(a)(1)(B)). Here, defendants maintain that the district court failed to make sufficient findings as to the scope of the joint criminal activity that they agreed to undertake, and that the district court's finding that the conduct of each was reasonably foreseeable by the other constituted clear error. First, because we affirm the sentences imposed by the district court solely on the basis of the PCP recovered from the suitcase carried by Hamberlin, whether Hamberlin is also responsible, under Section 1B1.3, for the PCP carried by Payne is irrelevant. In addition, as discussed below, defendants' arguments are without merit.
 
 
 13
 This Court accepts a district court's findings with respect to relevant conduct unless they are clearly erroneous. United States v. Moored, 997 F.2d 139, 143 (6th Cir.1993). The government, furthermore, must prove the relevance of the conduct by a preponderance of the evidence. Id. at 144.
 
 
 14
 In challenging the district court's determination that they are responsible for each others' conduct, Hamberlin and Payne rely primarily on three decisions by this Court, all of which are distinguishable from the instant matter. In support of their first contention, that the district court erred in failing to make findings regarding the scope of their criminal activity, defendants rely on Jenkins, 4 F.3d at 1345-47, and United States v. Okayfor, 996 F.2d 116, 120-22 (6th Cir.), cert. denied, 114 S.Ct. 238 (1993). In both of these decisions, this Court found that the district court erred in holding a defendant accountable for the conduct of others, under Section 1B1.3, without first making an initial determination regarding the scope of the criminal activity the particular defendant agreed to undertake. Jenkins and Okayfor, however, involved complex conspiracies, consisting of numerous conspirators and multiple drug transactions. Moreover, in finding error, this Court emphasized in both instances that the district court failed either "implicitly or explicitly" to address the scope of the agreed-to activity. Jenkins, 4 F.3d at 1347; Okayfor, 996 F.2d at 121.
 
 
 15
 Here, by contrast, Hamberlin and Payne were charged with transporting only the PCP found in their luggage on this one occasion, not with taking part in a complex conspiracy. In addition, the record clearly reveals that each defendant transported PCP by plane from California to Cleveland, each carried a part of the shipment, each used Listerine bottles to carry the contraband, and one carried the plane tickets for both. Given these facts, the district court's statement that its review of the evidence "persuades me that there was a co-joining of efforts in the transportation of this drug" is sufficient for us to conclude that the court considered the scope of the criminal activity to which the defendants agreed.
 
 
 16
 In support of their second contention, that the district court erred in finding that the conduct of each was reasonably foreseeable by the other, Hamberlin and Payne rely on United States v. Blankenship, 954 F.2d 1224, 1228 (6th Cir.), cert. denied, 113 S.Ct. 288 (1992). In that case, which involved a multiple-transaction drug conspiracy, the district court attributed one pound of cocaine possessed by Billy Hoyt Blankenship to his brother and coconspirator, Jimmie Elvis Blankenship, for sentencing purposes. This Court subsequently remanded on the ground that the district court failed to state what it "found to be the object of the conspiracy or its extent," and thus did not make sufficient findings to conclude that Jimmie Elvis could have reasonably foreseen, and should be held accountable under Section 1B1.3 for, Billy Hoyt's actions.
 
 
 17
 Here, by contrast, the goal of the jointly undertaken criminal activity, to transport PCP to Cleveland, was never seriously in question. Moreover, the facts in the record enumerated above amply support the district court's implicit conclusion at sentencing that both Hamberlin and Payne "knew or should have known the amount of" PCP the other possessed. Blankenship, 954 F.2d at 1228.
 
 
 18
 Thus, the district court did not err in applying the relevant conduct provisions of Section 1B1.3, and holding Hamberlin and Payne accountable for each other's conduct for sentencing purposes.
 
 IV
 
 19
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 *
 This Court has subsequently ruled that a district court is not required to exclude a container of drugs from the total amount of drugs attributable to a conspiracy for sentencing purposes on the ground that the container was obtained during an unconstitutional search. United States v. Jenkins, 4 F.3d 1338, 1344-45 & n. 8 (6th Cir.1993) (noting that the Court's apparent holding to the contrary in Nichols, 979 F.2d at 410-411, was merely dicta), cert. denied, 62 U.S.L.W. 3690 (U.S.1994)