UNITED STATES of America, Plaintiff,

v.

David M. FOSTER, Defendant.

No. 93–CR–80141–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 18, 1994.

Richard L. DeLonis, Asst. U.S. Atty., Detroit, MI, for plaintiff.

David F. DuMouchel, Detroit, MI, for defendant.

## OPINION AND ORDER REGARDING SENTENCE ENHANCEMENT FOR BREACH OF TRUST/USE OF A SPECIAL SKILL

ROSEN, District Judge.

### I. INTRODUCTION

On February 10, 1993, a federal grand jury issued an eight-count indictment against Defendant charging him with various crimes associated with a money-laundering scheme that he hatched and executed with undercover government agents. Defendant moved this Court on June 29, 1993, to dismiss the indictment on the grounds of outrageous government conduct; the Court declined to grant this relief. *See United States v. Foster,* 835 F.Supp. 360 (E.D.Mich.1993).[1] Following the denial of Defendant's motion, he

---

1. The facts underlying the indictment are set out in detail in this opinion, which is incorporated into this opinion by reference.

and the Government entered into lengthy plea agreement negotiations. What resulted was an agreement by Defendant to plead guilty to one count of causing a financial institution to fail to file a currency transaction report ("CTR")[2] in return for the dismissal of the other counts of the indictment and a Government recommendation that his sentence not exceed fifteen months. Under the plea agreement, the Government calculated Defendant's offense level to be 12 (six points for the crime itself and an additional six points because more than $70,000 was involved),[3] and his criminal history category as I.[4] Such a calculation would result in a 10–16 month range for his sentence, and it would qualify Mr. Foster to serve up to one-half of his sentence in community confinement or home detention. *See* Sentencing Table, 1993 U.S.S.G. Manual, p. 270 (offense level of 12 and criminal history category of I results in Zone C sentence); U.S.S.G. § 5C1.1(d) ("If the applicable guideline range is in Zone C of the Sentencing Table, the minimum term may be satisfied by—(1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention ... provided that at least one-half of the minimum term is satisfied by imprisonment.").

The U.S. Probation Department ("USPO") recommended to the Court a slightly stiffer guideline range of 15–21 months. The USPO based its recommendation for a higher range on its contention that Defendant abused a position of trust or used a special skill in committing his crime. *See* U.S.S.G. § 3B1.3.[5] If the Court should find an abuse

of a position of trust or the use of a special skill, a two-level offense enhancement would be warranted. Defendant's offense level would then jump to 14 points, and his range would become 15–21 months. This enhancement would have the further effect of denying Defendant the opportunity to spend any of his minimum sentence outside of prison. *See* Sentencing Table (Offense Level of 14 and Criminal History Category of I results in a Zone D sentence); U.S.S.G. § 5C1.1(f) ("If the applicable guideline range is in Zone D of the Sentencing Table, the minimum term shall be satisfied by a sentence of imprisonment.").

The Court has carefully considered the filings made by Defendant, the Government, and the USPO on the issue of whether Defendant breached a position of trust and/or used a special skill in committing the crimes charged in the indictment. After conducting a sentencing hearing on October 27, 1994, the Court held that the two-level enhancement under U.S.S.G. § 3B1.3 did apply to Defendant.[6] This opinion and order explains the reasoning behind that holding.

## II. *DISCUSSION*

The Court's analysis must start with a review of the applicable sentence enhancement guideline and its commentary. U.S.S.G. § 3B1.3 reads: "If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase [the offense level] by 2 levels." The "Application Notes" in the Guidelines' commentary to § 3B1.3 states:

---

2. This count charged Defendant with causing Michigan National Bank to fail to file a CTR for currency transactions in excess of $10,000. On March 2, 1988, Defendant deposited into his client trust account some $32,350 in money provided to him by the government agents in this case as part of their sting operation. Defendant broke up the deposit into amounts of less than $10,000 in order to get around the CTR requirements. This is all in violation of 31 U.S.C. §§ 5313(a), 5322(b) & 5324(a)(1).

3. *See* U.S.S.G. §§ 2S1.3(a) & 2F1.1(b)(1)(G).

4. Defendant had no prior convictions or arrests.

5. Initially, the USPO argued that Defendant breached a position of trust. Following Defendant's objections to this assertion, the USPO urged the Court to find that Defendant had used a special skill to further his crimes.

6. The Court also ruled on other matters with respect to Defendant's sentence at the October 27 hearing. These matters, and the final sentence imposed, were preserved in the record of that proceeding. The Court will discuss in this opinion only the issue of whether the breach of public trust/use of a special skill enhancement applies to the facts of this case.

"Public or private trust" refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this enhancement to apply, the position of trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult). This adjustment, for example, would apply in the case of an embezzlement of a client's funds by an attorney serving as a guardian, a bank executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination. This adjustment would not apply in the case of an embezzlement or theft by an ordinary bank teller or hotel clerk because such positions are not characterized by the above-mentioned factors....

"Special skill" refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts.

1993 U.S.S.G. Manual, pp. 232–33.

The research conducted by the parties and the Court has uncovered only a few court decisions interpreting U.S.S.G. § 3B1.3. The few cases that have addressed this provision seem to counsel that where there is no actual or specific victim to a crime, a breach of a position of public or private trust is not to be found for sentence enhancement purposes.

This issue was most squarely addressed in *United States v. Moored*, 997 F.2d 139 (6th Cir.1993), a case in which the Sixth Circuit was presented with a defendant who allegedly used positions of trust that he held with a local college in order to secure financing from lenders for various personal uses (including the repayment of sums owed to the college). Defendant also falsified an offer to purchase stock as security for the loan. Once the lenders learned of the falsification, they stopped payment on the checks comprising the loan. 997 F.2d at 140–41.

The USPO in *Moored,* as in this case, recommended a two-level enhancement for abuse of a position of trust, and the district court agreed to the enhancement. The Sixth Circuit rejected the enhancement with the following analysis:

In this matter the district court found that because of his position with Jordan College, Defendant appeared to the victims[/lenders] to be a better candidate for a loan than most people. Accordingly, the court found that Defendant had abused his position of trust with Jordan College.

Defendant recognizes that the district court's findings of fact will be reversed only for clear error. Nevertheless, Defendant argues for a *de novo* review based on a finding that the lower court has misinterpreted the "significant facilitation" standard. Defendant argues that the district court's interpretation of that standard would permit an enhancement for any defrauding borrower who, in the course of loan negotiations, discloses a position of trust, even if that position had nothing to do with the loan decision. In support of that argument, Defendant cites a Seventh Circuit case in which that court reviewed the sentence of a merchant who had defrauded a bank with which he had a credit processing agreement. *United States v. Kosth,* 943 F.2d 798 (7th Cir.1991).

In *Kosth,* the defendant had falsified $30,000 worth of credit card receipts, and the sentencing court had enhanced his offense level for abuse of a position of trust. The Seventh Circuit reversed, finding that the defendant's position was not different from any other merchant's.

Defendant argues that his position was no different from any other loan applicant's. He cites a crucial difference between his situation and the one in the *Kosth* case. In that case, the position of trust was with the victim of the offense of conviction. In Defendant's case, the position of trust was with a third party. Defendant also cites, for purposes of compari-

son, the Sixth Circuit case of *United States v. Sivils,* 960 F.2d 587 (6th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 130, 121 L.Ed.2d 84 (1992).

In the *Sivils* case, the defendants were special deputy sheriffs who engaged in criminal conduct related to their positions. In that case, the position of trust occupied by the defendants was with the victim of their offenses, the government. Defendant argues that his case is different in that the victim was a third party. The *Kosth* and *Sivils* courts said nothing about the situation in which a defendant has abused a position of trust with someone other than the victim of the charged conduct.

We find the district court's approach to the position of trust enhancement to be overly broad. Applying the standard that the lower court applied, a sentencing court would enhance the sentence of virtually every defendant who occupied any position of trust with anyone, victim or otherwise. An argument could be made in virtually every case that the position of trust, though not directly a part of the offense conduct, had some remote connection with the defendant's crime.

In order for the abuse of position of trust enhancement to be applied to a defendant, the evidence must show that the defendant's position with the victim of the offense significantly facilitated the commission of the offense. In this case, the Defendant held no position of trust with the intended victims of his offense. Accordingly, we find that the district court incorrectly enhanced Defendant's offense level.

997 F.2d at 144–45. *See also United States v. Duerson,* 25 F.3d 376, 383 (6th Cir.1994) ("We held in *Moored* that a defendant's offense level could not be increased for abuse of a position of trust unless the person or entity with which the defendant held such a position was a victim or intended victim of the offense.").

■ *Moored* and *Duerson* appear at first blush to preclude the finding of a breach of trust in this case because a sting operation, by definition, does not really involve a specific victim of criminal activity. However, the Court does not believe that it can so easily dismiss a breach of trust enhancement when it confronts a situation, like the one in this case, in which an attorney licensed by the state to practice and uphold the law flouts those duties and privileges by using his position to facilitate and engage in criminal activity.

It is a fact of life that any kind of large-scale criminal racket, whether it is drug-trafficking, illegal gambling or some other form of activity, simply cannot survive unless it launders its money. Racketeers, then, are dependent on finding people like Defendant, who hold positions of professional respect in business, banking and law, to facilitate their criminal endeavors by developing creative and seemingly legal outlets for their money. When professionals like Defendant accede to these wishes, they gravely undermine the professions to which they belong and abuse the positions of trust and privileges of trust that society reposes in them. Thus, viewed in this context, there is an identifiable victim in this case despite the fact that there was a sting operation in place. That victim is the Michigan bar (and, indirectly, the people of Michigan), which has licensed Defendant and provided him with the attendant privileges to that license.

A case for holding that Defendant breached a position of trust becomes even stronger when the Court considers exactly how this Defendant relied upon his position as an attorney to further his money-laundering scheme. As noted in the Court's earlier opinion in this case, the tapes reveal that Defendant assured the undercover agents with whom he dealt that their money-laundering transactions through his client trust account would be protected by attorney-client privilege. *United States v. Foster, supra,* 835 F.Supp. at 363–64. Defendant, therefore, expressly relied upon one of the chief privileges attached to his position as a licensed member of the bar to further his crime.

■ In this case, then, the Court believes that Defendant did abuse his position of public trust by engaging in money-laundering activities which were uncovered by the gov-

ernment sting operation. However, this is, admittedly, a close question, and the Court will not rest its decision on this basis only. Instead, the Court believes that a more clearly established basis for a two-level enhancement under § 3B1.3 can be found in its other prong, the use of a special skill.[7] Defendant does not contest that he deposited the money which the undercover agents gave him in his own client trust account as a cover for money laundering. Moreover, although he was a novice in setting up the corporation and bank account in Liechtenstein to which the money eventually flowed, there is no question that he (1) researched and used his knowledge of where would be a good place to launder money in choosing Liechtenstein (a country without a tax treaty with the U.S.), and (2) contacted one or more attorneys there and followed their advice in executing the various transactions on that end of the scheme. *See Foster*, 835 F.Supp. at 363–64; Defendant's Objections, pp. 5–9. In light of these uncontested facts, there can be no doubt that Defendant relied upon his training and status as an attorney to facilitate and conceal his crime. *See United States v. White*, 1 F.3d 13, 18 (D.C.Cir.1993) (holding that the district court did not err in finding that the defendant/lawyer used his special skills as an attorney to (1) set up a trust account to pay himself as part of passport fraud scheme and (2) obtain a birth record of a dead man as another part of the scheme), *cert. denied*, — U.S. —, 114 S.Ct. 1053, 127 L.Ed.2d 374 (1994).

■ Defendant's primary objection to the two-level enhancement under § 3B1.3 is that this Court should only consider the structuring charge to which he pled guilty in considering whether he breached a trust or used a special skill. Defendant, however, cites no authority for this proposition, and, indeed, the sentencing guidelines indicate the opposite approach. *See* U.S.S.G. § 1B1.3(a)(1)(A) (court may consider at sentencing "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant ... that

occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."). The Court believes that this guideline permits it to look to the extensive tape-recorded evidence supporting the entire indictment in determining Defendant's sentence. That evidence clearly demonstrates that the structuring violation upon which Defendant conceded guilt was an inseparable part of a complicated scheme to launder money. *See Foster, supra.*

### III. CONCLUSION

For the foregoing reasons, the Court holds that Defendant's sentence calculation shall be enhanced by two offense levels in accord with U.S.S.G. § 3B1.3 for use of a special skill in the conduct of a criminal scheme.

SO ORDERED.

from breach of trust to use of a special skill.

---

7. Indeed, as noted *supra* n. 5, the USPO changed its theory behind the two level enhancement